594 So.2d 254 (1991)
James DAILEY, Appellant,
v.
STATE of Florida, Appellee.
No. 71164.
Supreme Court of Florida.
November 14, 1991.
Rehearings Denied March 19, 1992.
*255 James Marion Moorman, Public Defender and A. Anne Owens, Assistant Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Joseph R. Bryant, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Dailey appeals his conviction for first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction and reverse the sentence.
On May 5, 1985, fourteen year-old Shelly Boggio, her twin sister Stacey, and Stephanie Forsythe were hitchhiking near St. Petersburg when they were picked up by James Dailey, Jack Pearcy and Dwaine Shaw. The group went to a bar and then to Pearcy's house, where they met Gayle Bailey, Pearcy's girlfriend. Stacey and Stephanie returned home. Shelly, Gayle and the men went to another bar and then returned to Pearcy's house about midnight. Shelly left in the car with Dailey and Pearcy, and when the two men returned without Shelly several hours later Dailey was wearing only a pair of wet pants and was carrying a bundle. The next morning, Dailey *256 and Pearcy visited a self-service laundry and then told Gayle to pack because they were leaving for Miami. Shelly's nude body was found that morning floating in the water near Indian Rocks Beach. She had been stabbed, strangled and drowned. Dailey and Pearcy were charged with her death.
Pearcy was convicted of first-degree murder and sentenced to life imprisonment. At Dailey's subsequent trial, three inmates from the county jail testified that Dailey had admitted the killing to them individually and had devised a plan whereby he would later confess when Pearcy's case came up for appeal if Pearcy in turn would promise not to testify against him at his own trial. Pearcy refused to testify at Dailey's trial. Dailey presented no evidence during the guilt phase. The jury found him guilty of first-degree murder and unanimously recommended death. At sentencing, Dailey requested the death penalty and the court complied, finding five aggravating[1] and no mitigating circumstances.

GUILT PHASE
Dailey was extradited from California to stand trial in Florida and in opening argument the prosecutor made the following comment: "Detective Halliday will indicate to you he had to go out because Mr. Dailey was fighting extradition to come back to Florida." Defense counsel unsuccessfully moved for a mistrial. During Detective Halliday's testimony, the following exchange took place:
Prosecutor: When was Mr. Dailey arrested on that arrest warrant?
Halliday: Mr. Dailey was arrested on that, I believe, it was in November of '85.
Prosecutor: As a result, did you take a further part in returning him to the State of Florida?
Halliday: Yes, in the extradition procedures, yes.
Prosecutor: Could you explain to the jury what extradition proceedings are?
At that point, defense counsel again moved for a mistrial, which was again denied. When testimony resumed, the prosecutor stated briefly, "Okay. Detective Halliday, we were talking about the extradition before." The prosecutor then asked Halliday the reason for going to California and the detective replied that he did so in order to identify Dailey. No further mention of extradition was made.
Dailey claims that mention of his efforts to avoid extradition was irrelevant and prejudicial. The State, on the other hand, contends that the evidence was relevant to show flight and consciousness of guilt. Dailey had moved to Florida only months before the murder. The day after the murder, he fled to Miami, but then left the next day. The fact that many months later Dailey was residing in California and exercised his right to resist extradition there has no bearing on flight following the crime or consciousness of guilt. The evidence should have been excluded. Because the statements were extremely brief and the testimony undeveloped, however, we find beyond a reasonable doubt that the error did not affect the verdict.[2]See State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986).
The prosecutor introduced into evidence a photograph of Dailey taken at the time he was booked into jail in Florida following extradition. Defense counsel objected, claiming that the photograph had not been provided during discovery. The trial court responded:

*257 Here's what I am going to do. I will ask the jury to step out. If you desire special voir dire of this witness, you may have it.
Defense counsel declined the offer. Dailey now claims that the trial court committed per se reversible error by not conducting a hearing into the alleged discovery violation pursuant to Richardson v. State, 246 So.2d 771 (Fla. 1971). We conclude that because defense counsel declined the offer of a special inquiry outside the jury's presence and failed to request any alternative inquiry, the trial court properly overruled the objection. We note that the photograph was similar to one that had already been admitted and the effect of its admission was inconsequential.
Detective Halliday testified that he went to Kansas to interview Pearcy's mother and obtained Pearcy's shirt, which was introduced into evidence. The following exchange then took place:
Prosecutor: Now, Jack Pearcy was ultimately returned to Pinellas County?
Halliday: Yes, he was.
Prosecutor: When was he returned to Pinellas County?
Halliday: It was on the 21st, I believe of May. I am not exactly sure of the date but he came back with us after we went out there.
Prosecutor: Did you collect any further evidence after he returned?
Halliday: Yes, we collected shoes from him and we also, when we returned here, found a sheath at the Walsingham Reservoir which was a knife sheath.
Defense counsel objected and moved for a mistrial, which was denied. Dailey now claims that although Pearcy refused to testify at Dailey's trial the above statement was designed to introduce into evidence the content of Pearcy's out-of-court statement concerning the location of the knife sheath and was thus inadmissible hearsay.[3] The testimony, however, does not explicitly or by implication attribute the finding of the sheath to statements by Pearcy. It merely describes the temporal sequence in which evidence was uncovered.[4] We find no error.
As part of the guilt phase jury instructions, the court gave Florida Standard Jury Instruction (Criminal) 3.01 concerning principals, including the sentence: "To be a principal, the defendant does not have to be present when the crime is committed." Dailey contends this was error because no evidence was introduced showing that he was not present. As the trial court pointed out, however, it gave the complete instruction in an abundance of caution in case either side argued in closing that Dailey had not been present. The instruction is a correct statement of the law and we find no error.
During the trial, Dailey did not take the stand. The prosecutor made the following statement in closing argument:
Now, there are only three people who know exactly what happened on that Loop area... . Shelly Boggio and she is dead; Jack Pearcy and he is not available to testify; and the Defendant. So, when the defense stands up here, as they have already and I imagine Mr. Andringa will when he gets up to rebut, and says where's the evidence, where's the eye-witnesses, use your common sense. Murderers of young girls don't commit the crime, don't sexually assault and commit a crime of murder with an audience.
The prosecutor also made the following statement:

*258 Fingernails. You didn't here [sic] about the length of Mr. Dailey's fingernails. No, because he left Pinellas County, went to Miami, where he stayed less than 24 hours and we arrest him months later in the State of California. That's right. Only he knows the length of his fingernails.
Dailey claims that these statements constitute impermissible comments on his right to remain silent. The State counters that they were fair rebuttal to defense charges that the State had produced little evidence.
A comment is impermissible if it is "fairly susceptible" of being viewed by the jury as referring to a defendant's failure to testify. DiGuilio, 491 So.2d at 1131. In State v. Marshall, 476 So.2d 150 (Fla. 1985), the prosecutor commented to the jury:
Ladies and gentlemen, the only person you heard from in this courtroom with regard to the events on November 9, 1981, was Brenda Scavone [the victim].
Id. at 151. There, we ruled that the prosecutor's comments impermissibly highlighted the defendant's decision not to testify. Id. at 153. We find the present comments virtually indistinguishible and similarly impermissible. However, in light of other substantial evidence of guilt, we find beyond a reasonable doubt that the error did not affect the verdict. DiGuilio.

PENALTY PHASE
During the penalty phase, the judge qualified Detective Halliday as an expert in homicide and sexual battery and allowed him to testify that because the victim's body was found nude and her clothing scattered, it was highly likely that a sexual battery or attempt had occurred. Dailey claims that this testimony was only common sense and it was error for the court to permit expert testimony on a matter that is within the common understanding of the jury. Halliday, however, had extensive training and experience in homicides and sexual batteries; his expert testimony was helpful in consolidating the various pieces of evidence found at the crime scene. This would not necessarily be within the common understanding of the jury. We find no error.
To support the aggravating factor that the defendant had been convicted of a prior violent felony, the State introduced into evidence a certified copy of a judgment and sentence for aggravated battery. The papers contained a notation that a second charge had been dropped pursuant to a plea agreement. Defense counsel unsuccessfully sought to have the notation deleted and now claims error. The notation, however, was inconspicuous; it was on the second page of the papers and referred to a case number only. Any error was harmless.
Dailey contends that the court erred in finding as an aggravating circumstance that the murder was committed during a sexual battery or attempted sexual battery. The trial court found:
The evidence presented during all phases of this trial establishes beyond a reasonable doubt that the motive for taking the victim, Shelly Boggio, to the area adjacent to the Route 688 bridge was sexual battery. The victim's body was found completely nude floating in the Intercoastal Waterway. Her underwear was found on shore near areas of fresh blood. Shelly Boggio's jeans had been removed and thrown in the waterway. Potential physical evidence of an actual sexual battery upon Shelly Boggio was lost because her body had been floating in the waterway for an extended period of time. All of the evidence and testimony presented establishes beyond a reasonable doubt that Shelly Boggio at the very least was a victim of an attempted sexual battery.
We note the following additional evidence: Shelly had rebuffed Dailey's advances earlier that evening; Shelly had been stabbed both prior to and after removal of her shirt; her underwear was found 140 feet from her other clothing, with a trial of blood leading from the clothing to the underwear. We conclude that the record contains competent substantial evidence to support the trial court's finding of an attempted sexual battery.
*259 Dailey claims that the court erred in finding as an aggravating circumstance that the murder was committed to prevent a lawful arrest. To establish this factor, the evidence must show that the "dominant motive" for the murder was the elimination of a witness. White v. State, 403 So.2d 331, 338 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). The evidence here fails to show this. The court's finding was error. The evidence also fails to support the finding that the murder was committed in a cold, calculated, and premeditated manner. This aggravating circumstance is reserved for crimes showing heightened premeditation, such as executions, contract murders, and witness elimination killings. Hansbrough v. State, 509 So.2d 1081, 1086 (Fla. 1987). No such showing was made here. This too was error.
In its sentencing order, the court expressly considered four statutory mitigating circumstances and found them inapplicable. The trial court then considered a number of nonstatutory factors and concluded: "This Court does not consider any of the factors presented by the Defendant to mitigate this crime." The United States Supreme Court, however, requires that a sentencing court consider as a mitigating circumstance "any aspect of a defendant's character or record and any of the circumstances of the offense" that reasonably may serve as a basis for imposing a sentence less than death. Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978). Once established, a mitigating circumstance may not be given no weight at all. Eddings v. Oklahoma, 455 U.S. 104, 114-15, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982). In its sentencing order, the trial court recognized the presence of numerous mitigating circumstances, but then accorded them no weight at all. This was error.
The judge in the present case also presided over the trial of Jack Pearcy. In his present sentencing order, the judge noted this fact and pointed out that he
carefully considered the evidence presented at each trial, the sentencing phase of each trial and at each sentencing, the Sentencing Memoranda filed, the arguments of all counsel, and the statement read into the record and placed in the file by the Defendant herein, JAMES DAILEY. The presentence investigation for each defendant was also considered.
In considering evidence from a different trial that was not introduced in the guilt phase of the present trial, the trial court deprived Dailey of the opportunity to rebut this proof. This was error. Engle v. State, 438 So.2d 803 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 753 (1984).
Based on the foregoing, we affirm the conviction, reverse the sentence, and remand for resentencing before the trial judge. We note that our decision in Campbell v. State, 571 So.2d 415 (Fla. 1990), provides guidelines for mitigating circumstances.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT and GRIMES, JJ., concur.
KOGAN, J., concurs in guilt phase and concurs in result only as to penalty.
NOTES
[1] The court found the following circumstances in aggravation: previous conviction of a violent felony; commission during a sexual battery; commission to avoid arrest; the murder was especially heinous, atrocious, or cruel; and the murder was committed in a cold, calculated, and premeditated manner. See § 921.141(5), Fla. Stat. (1989).
[2] We also find as harmless error the State's introduction into evidence of a knife sheath (which was insufficiently linked to either the crime or the defendant); the State's use of the hearsay statements of Detective Halliday concerning the inmates' reasons for coming forward (which fail under the recent fabrication exception); and the refusal of the trial court to allow defense counsel to question inmate Skalnik concerning the specifics of charges pending against him (which were admissible to show possible bias).
[3] Dailey also claims that the hearsay rule was violated by the testimony of two inmates concerning notes they passed between Dailey and Pearcy in prison. Inmate Leitner said he reported the notes because he "didn't particularly enjoy having anything to do with inmates that were discussing a crime like that where someone was killed." This statement, however, was not hearsay because it was not offered to prove that Dailey committed the murder, but rather to show why Leitner went to authorities. As to the testimony of the second inmate, the trial court recognized it as hearsay and gave a proper curative instruction.
[4] We note that we have long held that "[a]n officer may say what he did pursuant to information but he may not relate the information itself for such is hearsay." Collins v. State, 65 So.2d 61, 67 (Fla. 1953).