965 So.2d 38 (2007)
James M. DAILEY, Appellant,
v.
STATE of Florida, Appellee.
James Milton Dailey, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC05-1512, SC06-576.
Supreme Court of Florida.
May 31, 2007.
Rehearing Denied September 10, 2007.
*41 Bill Jennings, Capital Collateral Regional CounselMiddle Region, and David R. Gemmer and Robert T. Strain, Assistant CCRC, Tampa, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, and Katherine V. Blanco, Assistant Attorney General, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
James Milton Dailey was convicted of first-degree murder and sentenced to death for the 1985 killing of fourteen-year-old Shelley Boggio. He now appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the trial court's order and deny Dailey's petition for a writ of habeas corpus.

I. FACTS
Shelley Boggio's nude body was found floating in the water near Indian Rocks Beach in Pinellas County, Florida. She had been stabbed repeatedly, strangled, and drowned. On the day of the murder, Shelley, her twin sister Stacey, and Stephanie Forsythe had been hitchhiking along a road near St. Petersburg, Florida. They were picked up by Dailey, Jack Pearcy, and Dwayne "Oza" Shaw. The three men drove the girls to a local bar. Stacey *42 and Stephanie returned home shortly thereafter, but Shelley remained with the group and returned to Jack Pearcy's house. Dailey was living in Pearcy's home, where he had his own bedroom. Pearcy and his girlfriend, Gayle Bailey, shared a second bedroom. Shaw, a friend of Pearcy's from Kansas, was temporarily staying at Pearcy's house while he resolved marital issues. He slept on a couch in the living room.
Shaw testified that on the night of the murder he drove with Pearcy and Boggio to a public telephone booth, where he was dropped off. Pearcy and Boggio then drove off alone. After speaking on the phone for several minutes, Shaw returned to the house on foot and fell asleep on the couch. Shaw testified that when he woke up later that night, he saw Pearcy and Dailey, but not Boggio, entering the house together. Shaw noticed that Dailey's pants were wet.
The State presented testimony from the lead detective in the case, John Halladay, and three informants who were inmates at the same facility where Dailey was held while awaiting trial. One of the inmates, Paul Skalnik, testified that Dailey had struck a deal with Pearcy, who had also been charged with Boggio's murder.[1] Skalnik testified that he relayed messages between Dailey and Pearcy. According to Skalnik, Dailey promised that if Pearcy did not testify at Dailey's trial, Dailey would attempt to exonerate Pearcy once he was acquitted.
Based on the testimony of Shaw, Skalnik, and several other witnesses, Dailey was found guilty of first-degree murder and was sentenced to death. On appeal, this Court affirmed the conviction but struck two aggravating circumstances and remanded the case for resentencing after concluding the trial court had failed to weigh mitigating circumstances. Dailey v. State, 594 So.2d 254 (Fla.1991).[2] At resentencing, Dailey was again sentenced to death. This Court affirmed. Dailey v. State, 659 So.2d 246 (Fla.1995).[3] Dailey then filed in the trial court a rule 3.850 motion for postconviction relief, raising fifteen claims.[4] After conducting a hearing *43 pursuant to Huff v. State, 622 So.2d 982 (Fla.1993), the trial court granted an evidentiary hearing on claims 1-8 and 15. After the hearing, the trial court denied all claims. Dailey now appeals the trial court's denial of relief. He also petitions for writ of habeas corpus.

II. ANALYSIS
Dailey raises four issues on appeal and two issues in his petition for writ of habeas corpus. We address each of these in turn.

A. Postconviction Claims
In his appeal from the trial court's denial of postconviction relief, Dailey raises four issues. For the reasons explained below, we affirm the trial court's denial of these claims.

1. Ineffective Assistance of Counsel and Prosecutorial Misconduct
Dailey first claims that trial counsel was ineffective during closing argument for failing to object to three alleged instances of prosecutorial misconduct. These were: (1) a statement by the prosecutor concerning Dailey's constitutional presumption of innocence; (2) improper vouching for the credibility of witness Paul Skalnik; and (3) an alleged "blatant misstatement of fact regarding when [Dwayne] Shaw went to use the phone" on the night of the murder.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test governing ineffective assistance of counsel claims. First, a defendant must demonstrate that counsel's performance was deficient. Id. at 687, 104 S.Ct. 2052. An attorney's performance is deficient when it falls below an objective standard of reasonableness under prevailing professional norms. Burns v. State, 944 So.2d 234, 239 (Fla.2006). Second, a defendant must show that he was prejudiced by the deficiency. Id. "Prejudice is demonstrated when `there is a reasonable probability that but for counsel's unprofessional *44 errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). There is a strong presumption that counsel's performance was not deficient. Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
Regarding the prosecutor's statements concerning Dailey's presumption of innocence, we agree with the trial court that when read in context, the comments appear to be a statement by the prosecutor of her belief that the State satisfied its burden of proof. Therefore, counsel's failure to object was not deficient. We also find that the prosecutor's alleged improper vouching for Skalnik was a fair comment in response to defense counsel's attack on Skalnik's credibility during closing argument. Defense counsel referred to Skalnik as a "professional thief" and a poor police officer. The State was entitled to rebut these comments. Accordingly, Dailey has failed to demonstrate that counsel's failure to object constitutes deficient performance. With regard to the prosecutor's alleged "blatant misstatement of fact" concerning Shaw's testimony, this claim was never raised in Dailey's postconviction motion. Therefore, it is not cognizable on appeal. See Gordon v. State, 863 So.2d 1215, 1219 (Fla.2003) (holding that a claim is procedurally barred where it "was not raised in [the defendant's] motion for postconviction relief").
Dailey also argues that the cumulative effect of seven instances of prosecutorial misconduct undermined the validity of the trial to the extent that a guilty verdict could not have been reached without the assistance of these errors.[5] Because these claims of prosecutorial misconduct are all premised on facts in the record, they could have and should have been raised on direct appeal. The claims are therefore procedurally barred. See Spencer v. State, 842 So.2d 52, 60-61 (Fla.2003) (holding that claims alleging prosecutorial misconduct, which were based on facts in the record, could have and should have been raised on direct appeal and were thus not cognizable in postconviction proceedings).

2. Giglio/Newly Discovered Evidence Claim Concerning Paul Skalnik's Testimony
In his second issue on appeal, Dailey claims that six documents written and signed by Paul Skalnik either: (a) establish that the State knowingly presented false testimony, in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); or (b) constitute newly discovered evidence that Skalnik testified falsely at Dailey's trial. The six documents offered by Dailey include various motions and letters written by Skalnik at least a year after Dailey's conviction.[6] In *45 these documents, Skalnik alleges that the State promised him favorable treatment in return for testifying against Dailey and several defendants in other trials. We discuss the Giglio and newly discovered evidence claims in turn.
To establish a valid claim under Giglio, a defendant must show that (1) some testimony at trial was false, (2) the prosecutor knew that the testimony was false, and (3) the testimony was material. Suggs v. State, 923 So.2d 419, 426 (Fla. 2005). "This Court applies a mixed standard of review to Giglio claims, `defer[ring] to the factual findings made by the trial court to the extent they are supported by competent, substantial evidence, but review[ing] de novo the application of those facts to the law.'" Id. (alterations in original) (quoting Sochor v. State, 883 So.2d 766 (Fla.2004)). The documents presented at the evidentiary hearing fail the first and second prongs of Giglio. Skalnik's allegations, made a full year after Dailey's conviction, do not prove that he testified falsely at trial. His unsubstantiated accusations also fail to establish that the prosecutor knowingly presented false testimony. At the evidentiary hearing, Skalnik disavowed the accusations contained in the six documents and unequivocally stated that they were false. The prosecutor in Dailey's case also testified that she believed Skalnik's testimony to be truthful at the time of trial. Based on this testimony and the fact that the documents in question were unsubstantiated allegations written a full year after Dailey's trial, we affirm the denial of Dailey's Giglio claim.
To succeed on a claim of newly discovered evidence, a defendant must meet two requirements: first, the evidence must not have been known by the party or counsel at the time of trial, and the defendant or defense counsel seemingly could not have known of it by the use of due diligence; second, the newly discovered evidence must be of such a type that it would probably produce an acquittal on retrial. Melton v. State, 949 So.2d 994, 1011 (Fla. 2006). For the reasons discussed above in relation to the Giglio claim, we also find that Dailey has failed to establish that Skalnik's letters and motions would probably produce an acquittal on retrial. Therefore, the trial court's denial of Dailey's newly discovered evidence claim was proper.

3. Newly Discovered Evidence from Jack Pearcy and Oza Shaw
In his third issue, Dailey raises two claims. First, he argues that a 1993 sworn statement by Jack Pearcy constitutes newly discovered evidence. The trial court ruled that Pearcy's statement was uncorroborated hearsay which failed to qualify as a statement against interest. The trial court did not admit the statement into evidence. The criteria for evaluating whether a hearsay statement is against a declarant's interest were set forth in Lightbourne v. State, 644 So.2d 54 (Fla. 1994):
[A statement is against the declarant's interest if] at the time of its making, [it] was so far contrary to the defendant's pecuniary or proprietary interest or tended to subject him to liability or to render invalid a claim by him against another so that a person in the defendant's position would not have made the statement unless he believed it to be true. A statement tending to expose the *46 declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement.
Id. at 57 (quoting § 90.804(2)(c), Fla. Stat. (1991)). As the trial court noted, at no point in the statement does Pearcy admit to the murder of Shelley Boggio or the commission of any other crime. Pearcy has had numerous opportunities to testify on Dailey's behalf, and has repeatedly declined to do so. We affirm the trial court's evidentiary ruling.
Dailey also asserts that during the evidentiary hearing, Shaw recanted his trial testimony and provided a new sequence of events that would likely lead to an acquittal on retrial. Specifically, Shaw stated that he now recalls witnessing Pearcy enter the house by himselfnot with Daileylate on the night of the murder. According to Shaw's most recent version of events, Pearcy entered the house alone, walked into Dailey's bedroom, woke him, and then the pair left the house together. This differs from Shaw's original trial testimony, when he stated that he saw Pearcy and Dailey entering the house together when he first woke up. The trial court found that Shaw's latest version of events was unreliable and that his evidentiary hearing testimony would be unlikely to produce an acquittal on retrial.
A trial court's decision on a claim of recantation evidence will not be overturned on appeal absent an abuse of discretion. See Consalvo v. State, 937 So.2d 555, 562 (Fla.2006) ("[A]bsent an abuse of discretion, a trial court's decision on a motion based solely on newly discovered evidence [including a witness's newly recanted testimony] will not be overturned on appeal."); cert. denied, ___ U.S. ____, 127 S.Ct. 1821, 167 L.Ed.2d 330 (2007). Because recantation testimony "entails a determination as to the credibility of the witness, this Court `will not substitute its judgment for that of the trial court on issues of credibility' so long as the decision is supported by competent, substantial evidence." Marquard v. State, 850 So.2d 417, 424 (Fla.2002) (quoting Johnson v. State, 769 So.2d 990, 1000 (Fla.2000)); see also Robinson v. State, 865 So.2d 1259, 1262 (Fla.2004) ("The trial court has made a fact-based determination that the recantation is not credible. In light of conflicting evidence, we must give deference to that determination."). Furthermore, "[o]nly when it appears that, on a new trial, the witness's testimony will change to such an extent as to render probable a different verdict will a new trial be granted." Marquard, 850 So.2d at 424 (quoting Armstrong v. State, 642 So.2d 730, 735 (Fla. 1994)).
We find that the trial court did not abuse its discretion in ruling that Shaw's testimony at the evidentiary hearing was unreliable. Nearly twenty years had passed between the night of the murder and Shaw's appearance at the evidentiary hearing. We agree that Shaw's recollection of events at the time of trial is more likely to be accurate. Furthermore, even accepting Shaw's most recent version of events, the statements are not such that they would probably produce an acquittal on retrial. There remains evidence that Dailey and Pearcy returned to the house together later that night, that Dailey was not wearing his shirt, that his pants were wet, and that the victim was found in the water. There is also testimony from three inmates that Dailey confessed to the killing. The trial court's denial of this claim was proper.

4. Ineffective Assistance of Counsel Claims
In his final issue, Dailey raises four additional ineffective assistance of counsel claims. These include: (a) the failure to *47 use phone records to impeach Gayle Bailey; (b) the failure to cross-examine Skalnik about the circumstances surrounding criminal charges pending at the time of the evidentiary hearing; (c) the failure to use newspaper articles to impeach Skalnik's testimony; and (d) the failure to call Dailey to testify.
Dailey's claim regarding the use of phone records to impeach Gayle Bailey is procedurally barred because Dailey waived this claim at the evidentiary hearing. See Reaves v. State, 826 So.2d 932, 942 (Fla.2002) ("[W]here a defendant fails to pursue a claim . . . at the trial court, he waives such claim and cannot raise it on appeal with this Court."). Dailey's claim concerning counsel's failure to cross-examine Skalnik about his pending criminal charges is also barred. Dailey did not argue this claim in his brief. The claim is only mentioned in the heading of issue IV. When claims are listed in the headings of briefs but no argument is provided, those claims will be barred as insufficiently argued. See Lawrence v. State, 831 So.2d 121, 133 (Fla.2002).
We affirm the denial of Dailey's claim concerning the failure of counsel to impeach Skalnik through the use of newspaper articles. At the evidentiary hearing, counsel explained his decision not to use the articles for impeachment. Counsel stated his belief that admitting newspaper articles into evidence often instills a sense of legitimacy with the jury about the factual accounts they contain. Counsel sought to avoid this problem by excluding the articles at trial. This was a reasonable tactical decision and Dailey has failed to demonstrate that counsel's performance was deficient.
Lastly, we reject the claim that counsel was ineffective for failing to call Dailey to testify. At the evidentiary hearing, counsel explained that Dailey's story about how his pants became wet was likely to be rejected by the jury and would damage his credibility. This was a reasonable tactical decision and we find no deficiency in counsel's performance.

B. Petition for Writ of Habeas Corpus
In his petition for writ of habeas corpus, Dailey raises two issues premised on the Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). First, Dailey argues that Florida's murder statute is unconstitutional under Ring because it permits the State to indict a defendant for first-degree murder without specifying whether it intends to prosecute a theory of premeditated or felony murder. Dailey asserts that appellate counsel was deficient for failing to present this argument on appeal. This claim is meritless. "It is well established that an indictment which charges premeditated murder permits the State to prosecute under both the premeditated and felony murder theories." Parker v. State, 904 So.2d 370, 382-83 (Fla. 2005). Defense counsel cannot be deficient for failing to raise a meritless claim. Davis v. State, 928 So.2d 1089, 1135 (Fla. 2005) ("[A]ppellate counsel was not ineffective for failing to raise this meritless issue on appeal," cert. dismissed, 547 U.S. 1053, 126 S.Ct. 1649, 164 L.Ed.2d 357, and cert. denied, ___ U.S. ____, 127 S.Ct. 206, 166 L.Ed.2d 166 (2006)). Furthermore, Dailey's conviction became final before the Supreme Court's decision in Ring. We have held that Ring does not apply retroactively, see Johnson v. State, 904 So.2d 400, 405 (Fla.2005), and counsel cannot be deemed ineffective for failing to anticipate a change in law. See Mansfield v. State, 911 So.2d 1160, 1179 (Fla.2005) ("[T]he Apprendi [v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)] and Ring decisions were released after our decision on Mansfield's direct appeal, and appellate counsel is not required to anticipate changes in the law. Thus, this claim *48 would not have had any merit on direct appeal." (citation omitted)). For these reasons, we deny Dailey's first habeas claim.
Dailey next argues that Florida's death sentencing statute is unconstitutional under Ring. In his petition, Dailey candidly admits that "the weight of the case law clearly is against" this argument. Dailey states that the arguments "are made to preserve the issues." As noted above, we have already held that Ring is not retroactive. See Johnson, 904 So.2d at 405. Because Dailey's conviction became final before the decision in Ring, Dailey's claim is meritless.

CONCLUSION:
For the reasons above, we affirm the trial court's denial of Dailey's postconviction claims. We also deny Dailey's petition for writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, CANTERO, and BELL, JJ., concur.
QUINCE, J., recused.
NOTES
[1] Pearcy was also convicted for Boggio's murder and sentenced to life in prison.
[2] Dailey raised thirteen trial court errors: (1) admitting evidence that the appellant exercised his right to an extradition hearing and permitting the prosecutor to comment on that evidence during opening argument; (2) allowing the State to introduce a book-in photograph of Dailey that was not provided to defense counsel during discovery; (3) admitting evidence based on out-of-court statements by the codefendant who did not testify at trial; (4) admitting a knife sheath into evidence; (5) permitting the State to elicit hearsay evidence of prior consistent statements; (6) restricting defense counsel's cross-examination of Paul Skalnik about the nature of his past and pending charges; (7) instructing the jury over defense objection that the defendant need not have been present when the crime was committed to be guilty of first-degree murder; (8) failing to grant a mistrial when the prosecutor made two comments on the defendant's failure to testify during closing argument; (9) qualifying the lead detective in the case as an expert in homicide investigation and sexual battery; (10) finding three aggravating factors that were not supported by the evidence; (11) admitting a copy of Dailey's 1979 conviction for aggravated battery; (12) failing to consider statutory and nonstatutory mitigation; (13) basing its sentence partly on off-the-record information from the codefendant's trial.
[3] On appeal from resentencing, Dailey claimed the trial court erred in addressing the following issues: (1) in denying Dailey's motion for a new penalty phase; (2) in failing to find and weigh mitigating circumstances; and (3) in denying his motion to disqualify the judge.
[4] The fifteen claims were: (1) trial counsel was prejudicially ineffective for: (a) failing to object to prosecutorial misconduct, (b) failing to adequately cross-examine and impeach several witnesses, (c) failing to utilize testimony, (d) failing to move for change of venue, (e) waiving a speedy trial, (f) failing to have Dailey testify, (g) failing to properly object to prejudicial evidence, (h) failing to adequately argue a motion for judgment of acquittal, (i) failing to investigate witnesses, (j) being unfamiliar with the case, and (k) failing to hire and utilize an investigator; (2) trial counsel was ineffective for failing to adequately investigate and prepare mitigating evidence and to adequately challenge the State's case; (3) counsel failed to adequately prepare a competent mental health expert to evaluate Dailey and as a result he was deprived of his right to adequate mental health assistance; (4) the State withheld evidence which was material and exculpatory; (5) newly discovered evidence entitles Dailey to a new trial; (6) prosecutorial misconduct rendered the outcome of Dailey's trial unreliable; (7) the State either knowingly presented false testimony or failed to correct material false testimony; (8) Dailey's death sentence was disproportionate to that of his co-defendant, Jack Pearcy, who received life in prison; (9) the trial court committed fundamental error by instructing the jury regarding the aggravating factor of heinous, atrocious, or cruel, and the jury instruction was unconstitutionally vague; (10) Florida's capital sentencing statute is unconstitutional on its face, and to the extent this issue was not properly litigated on appeal, Dailey received ineffective assistance of counsel; (11) Dailey's penalty phase counsel was ineffective for failing to object to the penalty phase jury instructions which were incorrect under Florida law; (12) Dailey's counsel was ineffective for failing to object to comments, questions, and instructions that unconstitutionally and inaccurately diluted the jury's sense of responsibility towards sentencing; (13) the rules prohibiting Dailey's lawyers from interviewing jurors to determine if constitutional error was present violates the Equal Protection principles, the First, Sixth, Eighth, and Fourteenth Amendments, and the corresponding provisions of the Florida constitution; (14) execution by electrocution is cruel and unusual punishment; and (15) Dailey's trial was fraught with procedural and substantive errors, which in combination deprived him of a fair trial.
[5] The seven alleged errors are: (1) the prosecutor improperly commented on Dailey's right to remain silent by eliciting testimony that Dailey was fighting extradition; (2) the prosecutor improperly admitted a knife sheath which was not linked to the homicide; (3) the State improperly elicited testimony from Detective Halladay as to the reasons the inmates came forward to testify in the case; (4) the prosecutor made impermissible comments on Dailey's right to remain silent; (5) the prosecutor commented upon and misstated the presumption of innocence afforded to Dailey by the constitution; (6) the prosecuting attorney improperly vouched for the credibility of several witnesses; and (7) the prosecutor knowingly presented false argument concerning when Dwayne Shaw used the phone on May 5, 1985.
[6] The six documents are: (1) a motion to dismiss for prosecutorial misconduct, filed on August 7, 1988; (2) a motion to recuse the State Attorney's Office from prosecuting the defendant, filed on August 7, 1988; (3) a prose motion for discharge, filed on November 26, 1988; (4) a request for a judge to disqualify herself, filed on December 18, 1988; (5) a letter addressed to Judge Luten, dated August 20, 1988; and (6) a letter to Governor Martinez, dated August 15, 1988.