673 So.2d 17 (1996)
Robin ARCHER, Appellant,
v.
STATE of Florida, Appellee.
No. 83258.
Supreme Court of Florida.
March 14, 1996.
Rehearing Denied May 1, 1996.
*18 Nancy A. Daniels, Public Defender and David A. Davis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Curtis M. French, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Robin Archer appeals the death sentence imposed upon him at resentencing. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. We affirm the death sentence.
Archer was convicted of first-degree murder, armed robbery, and grand theft. The facts surrounding these crimes are set forth in Archer v. State, 613 So.2d 446 (Fla.1993). Following the jury's recommendation, the trial court sentenced Archer to death. On appeal, we affirmed the convictions but vacated the sentence because the trial judge improperly instructed the jury on the heinous, atrocious, or cruel aggravator. Consequently, we directed the trial court to empanel a jury and conduct a new sentencing proceeding. Id. at 448.
After hearing evidence and argument on remand, the new jury recommended a death sentence for Archer by a vote of seven to five. The trial judge followed that recommendation, finding that the aggravating circumstances[1] outweighed the mitigating circumstances.[2]
*19 On appeal, Archer raises the following seven claims with regard to his sentence: (1) the trial court's instruction to the jury on the cold, calculated, and premeditated aggravating factor was unconstitutionally vague; (2) the trial court erred in failing to provide a definition of reasonable doubt to the resentencing jury; (3) the trial court erred in failing to give the jury any of the general instructions and miscellaneous instructions on principals; (4) the trial court erred in admitting victim-impact evidence; (5) the trial court erred in refusing to instruct the jury that its sentencing recommendation was entitled to great weight; (6) the trial court erred in failing to instruct the jury that it could consider Archer's age of 26 as a mitigating factor; and (7) the trial court erred in granting several of the State's cause challenges of jurors who could not recommend death if Archer was not the triggerman.
First, we address Archer's claim that the trial court erred in its instruction to the jury on the cold, calculated, and premeditated aggravating factor. The trial court gave the standard jury instruction on this aggravator, which we found to be unconstitutionally vague in Jackson v. State, 648 So.2d 85 (Fla.1994). Claims that the instruction on the cold, calculated, and premeditated aggravator is unconstitutionally vague are procedurally barred unless the defendant both makes a specific objection or proposes an alternative instruction at trial and raises the issue on appeal. Walls v. State, 641 So.2d 381, 387 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995). At trial, defense counsel objected to the standard instruction and requested an expanded instruction. Because Archer raises the constitutionality of the instruction on appeal, we are able to address the merits of this claim.
While we agree that the trial court erred in giving this instruction, we conclude that this error was harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Harmlessness exists if the record supports a finding that, beyond a reasonable doubt, the murder could only have been cold, calculated, and premeditated without any pretense of moral or legal justification even if the proper instruction had been given. See Walls, 641 So.2d at 387. The record in this case reveals that all four of these elements would exist under any definition of the terms.
The first element is that the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage. See Fennie v. State, 648 So.2d 95, 99 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1120, 130 L.Ed.2d 1083 (1995). This was a contract murder, which is by its very nature cold. See Dailey v. State, 594 So.2d 254, 259 (Fla.1991) (finding that this aggravating circumstance is reserved for murders such as executions, contract murders, and witness elimination killings); Green v. State, 583 So.2d 647 (Fla.1991), cert. denied, 502 U.S. 1102, 112 S.Ct. 1191, 117 L.Ed.2d 432 (1992) (same). The facts of the murder itself prove the existence of a careful plan or prearranged design to kill beyond a reasonable doubt. Archer not only hired Patrick Bonifay, his cousin, to commit the murder but also wanted Bonifay to disguise the murder as a robbery. To this end, Archer provided Bonifay with a plan which included a description of the store's security system and the location of the store's cash box and emergency exit. Archer not only detailed what Bonifay should say to the clerk and when to shoot him, but Archer secured the gun and delivered it to Bonifay. Moreover, when Bonifay returned after killing the wrong clerk, Archer refused to pay him on the agreement. Under these facts, we find that the murder resulted from a careful plan or prearranged design beyond a reasonable doubt. See Sweet v. State, 624 So.2d 1138 (Fla.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1206, 127 L.Ed.2d 553 (1994).
Archer's acts were not only calm and careful, but they exhibited heightened premeditation over and above what is required for unaggravated first-degree murder. This contract murder proceeded over a period of several days and included an aborted attempt. Finally, Archer's actions clearly do not demonstrate any pretense of moral or legal justification. Banda v. State, 536 So.2d 221, 225 (Fla.1988), cert. denied, 489 U.S. 1087, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989) (defining pretense of moral or legal justification as any claim of justification or excuse *20 that, though insufficient to reduce degree of homicide, nevertheless rebuts otherwise cold and calculating nature of homicide). Despite Archer's contention that harmless error is inappropriate in this case because the jury could have concluded that Archer provided Bonifay with only a plan to rob the clerk and not a plan to murder, our review of the record does not support Archer's position. Accordingly, the error in instructing the jury as to cold, calculated premeditation is harmless because all four elements of this aggravator exist under any definition. See Walls.
Next we examine Archer's claim that the trial judge erred in failing to provide a definition of reasonable doubt to the resentencing jury. The standard guilt phase jury instructions provide a constitutionally proper definition of reasonable doubt, see Esty v. State, 642 So.2d 1074 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1380, 131 L.Ed.2d 234 (1995); however, there is no corresponding definition in the standard sentencing phase jury instructions. During the resentencing hearing, the trial judge gave the jury the standard sentencing phase jury instruction which states:
Each aggravating circumstance must be established beyond a reasonable doubt before it may be considered by you in arriving at your decision.
If one or more of the aggravating circumstances are established, you should consider all of the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed.
A mitigating circumstance need not be proved beyond a reasonable doubt by the defendant. If you are reasonably convinced that a mitigating circumstance exists, you may consider it established.
Fla.Std.Jury Instr. (Crim.) 79. Archer did not object to this instruction at trial and raises the issue for the first time on appeal.
This Court has held that jury instructions are subject to the contemporaneous objection rule, see Armstrong v. State, 642 So.2d 730 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1799, 131 L.Ed.2d 726 (1995); Parker v. State, 641 So.2d 369 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 944, 130 L.Ed.2d 888 (1995), and absent an objection at trial, can be raised on appeal only if fundamental error occurred. Fundamental error is "error which reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." State v. Delva, 575 So.2d 643, 644-45 (Fla. 1991) (quoting Brown v. State, 124 So.2d 481, 484 (Fla.1960)). While the State must prove each element of a crime beyond a reasonable doubt, our cases have not found error when a jury is instructed on this standard but not given a definition of the term. See Barwicks v. State, 82 So.2d 356 (Fla.1955); Knight v. State, 60 Fla. 19, 53 So. 541 (1910); accord Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994) (stating that a trial court must instruct the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt; however, the United States Constitution does not require a trial court to define reasonable doubt for the jury). Because we find that this instruction appropriately holds the State to the burden of proving each aggravating circumstance beyond a reasonable doubt, we hold that failure to define reasonable doubt to the jury in the sentencing phase of a capital trial is not fundamental error. Consequently, we reject Archer's claim.
Similarly, we reject Archer's claims that the trial court erred in failing to give the jury any general instructions or miscellaneous instructions on principals.[3] Archer did *21 not object to the instructions at trial, and thus they are not preserved for appeal. See Sochor v. State, 619 So.2d 285 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 638, 126 L.Ed.2d 596 (1993); White v. State, 446 So.2d 1031 (Fla.1984). In any event, we have carefully reviewed the record and find that the claimed errors, taken individually or collectively, do not constitute fundamental error. We therefore find no merit in this claim.
Archer's claim that the trial court erred in admitting victim-impact evidence is likewise without merit. Archer claims that victim-impact evidence is a nonstatutory aggravator and its application here would violate ex post facto prohibitions. We recently rejected similar arguments in Windom v. State, 656 So.2d 432 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995), and similarly reject Archer's claim.
Further, we reject Archer's argument that the trial court erred in not instructing the resentencing jury that its recommendation was entitled to great weight. While Archer proposed an expanded instruction, the court gave the standard jury instruction. We have previously held that Florida's standard jury instructions fully advise the jury of the importance of its role. See Sochor, 619 So.2d at 291-92. Therefore, this claim is without merit.
Additionally, we reject Archer's claim that the trial court erred in refusing to instruct the jury that it could consider Archer's age of 26 as a mitigating factor.[4] The court found that there was no evidence reflecting that Archer's age at the time of the homicide did not accurately reflect his mental or physical age and instead gave the general instruction that the jury could consider "any aspect of the defendant's character or record and any other circumstances of the offense".
We recently addressed a similar claim in Mungin v. State, 667 So.2d 751 (Fla.1995). We state again that the better practice may be for trial courts to give the specific instruction on age. However, on the facts of this record, we agree with the trial court and find that it did not abuse its discretion in failing to give the requested instruction.
In his last claim, Archer alleges error in the trial court's granting of several of the State's cause challenges of jurors. After voir dire, the State moved to dismiss several jurors for cause based upon their representation that they could not recommend the death penalty if Archer was not the triggerman. Archer did not object to this motion and in fact agreed with the State to dismiss these jurors. Consequently, there was no ruling by the trial judge upon which to base a claim of error. We therefore reject this claim. Peterka v. State, 640 So.2d 59 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 940, 130 L.Ed.2d 884 (1995).
Accordingly, we affirm Archer's sentence of death.
It is so ordered.
GRIMES, C.J., and OVERTON, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which SHAW and KOGAN, JJ., concur.
ANSTEAD, Justice, concurring in part, dissenting in part.
While I am in agreement with the majority opinion on the remaining issues, I do not believe the record supports a finding of harmless error in the giving of a constitutionally infirm instruction on the cold, calculated, and premeditated (CCP) aggravator. This holding squarely conflicts with our recent ruling on the same issue in Jackson v. State, 648 So.2d 85 (Fla.1994), where we held:
Claims that the instruction on the cold, calculated, and premeditated aggravator is unconstitutionally vague are procedurally barred unless a specific objection is made at trial and pursued on appeal. James v. State, 615 So.2d 668, 669 & n. 3 (Fla.1993). However, Jackson objected to the form of the instruction at trial, asked for an expanded instruction which essentially mirrored this Court's case law explanations of the terms, and raised the constitutionality of the instruction in this appeal as well. *22 Thus, the issue has been properly preserved for review.
As the Supreme Court explained in Sochor v. Florida, 504 U.S. 527, [538], 112 S.Ct. 2114, 2122, 119 L.Ed.2d 326 (1992), while a jury is likely to disregard an aggravating factor upon which it has been properly instructed but which is unsupported by the evidence, the jury is "unlikely to disregard a theory flawed in law." See also Griffin v. United States, 502 U.S. 46, 59, 112 S.Ct. 466, 474, 116 L.Ed.2d 371 (1991) ("When jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and experience will save them from that error.")
In Stringer v. Black, 503 U.S. 222, 232, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367 (1991), the Supreme Court addressed the role of the reviewing court when the sentencing body is told to weigh an invalid factor in its decision:
[A] reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale. When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence.
In the instant case, the trial judge found two aggravating circumstances (victim was a law enforcement officer and CCP) and several nonstatutory mitigating circumstances. We do not fault the trial judge for giving the standard CCP instruction in this case. Hodges [v. Florida, 506 U.S. 803, 113 S.Ct. 33, 121 L.Ed.2d 6] was not decided by the Supreme Court until October 5, 1992. The sentence here was imposed by the trial judge on February 21, 1992. Yet, we cannot say beyond a reasonable doubt that the invalid CCP instruction did not affect the jury's consideration or that its recommendation would have been the same if the requested expanded instruction had been given. Thus, we vacate Jackson's death sentence and remand to the trial court with directions to empanel a new jury, to hold a new sentencing proceeding, and to resentence Jackson. See James, 615 So.2d at 669.
Id. at 90.
The majority concludes that there is no reasonable possibility that the jury would not have found the cold, calculated, and premeditated aggravator because the evidence was undisputed that the aggravator existed. However, the record does not support this conclusion. Indeed, there is some evidence that would support the defendant's position that, at most, he urged the actual gunman to commit a robbery, but not a murder.[5]
In his brief, appellant asserts that there were weaknesses in the prosecution theory that Archer hired a gunman, Patrick Bonifay, for half a million dollars, to kill a store clerk:
First, that Archer had a half million dollars defies belief. No one other than Bonifay saw it. What is more, Archer's lifestyle of near poverty makes Bonifay's story ludicrous. We have, for example, Robin Archer with so little money that he has to live with friends, and borrow money to go to a trade school. His girlfriend gave him money. Everyone who testified about Archer's status, except Bonifay, added to the picture that this young man never had two nickels to rub together.
Moreover, Bonifay's cold hearted murder of Coker as he told his victim to "shut the f___ up" and "f___ his family" exhibits this co-defendant's contempt for life.
The logic of Bonifay's story also defies credibility. Why would Archer, who had $500,000 want to kill Wells for ostensibly getting him fired from a job that must have paid only a minimum wage salary. Why would he wait 18 months to have it done? Why would he have some one else do it? For a man who had a lifetime's wages in a suitcase and who was willing to blow it on a murder, his story makes little sense.
What the evidence does show is that Archer told Bonifay how one could rob the *23 Trout Auto Parts store. He never told Bonifay to do it, only how it could be done.
The jury nevertheless could have believed that Archer coldly, with calculation and premeditation planned the robbery. Then using the CCP definition given by the court, it could have concluded that because the robbery was cold, calculated, and premeditated, the murder was also. Such logic, while perhaps sufficient to support a conviction for guilt under a felony murder theory cannot carry the day with the CCP aggravator. As this court held in Hardwick v. State, 461 So.2d 79, 81 (Fla. 1984), a planned robbery does not mean the resulting murder was also sufficiently premeditated for the CCP aggravator to apply.
Appellant's Initial Brief at 15-16. While this assessment goes too far in ignoring the contrary evidence of Archer's role, it correctly identifies an evidentiary basis for the jury to reject CCP as an aggravator.
There is also other evidence that was before the jury on this issue. At the resentencing, Bonifay refused to testify and his prior testimony was read to the jury. According to Bonifay's testimony, he initially went to the store and encountered Wells, the alleged target, but got cold feet and left the scene. The next night he went back with accomplices to the store and encountered a different clerk, whom he shot and killed. In other words, a jury could question why Bonifay would kill the wrong man even though he had identified Wells from the previous night's encounter.[6]
Bonifay also testified he killed the victim because his accomplice, Clifford Barth, told him to do it in order to avoid witness identification:
I was just going to put on my ski mask real quick and rob him, because he didn't see us coming up there. And so he turned around and he said, "I will be right with you." And then, you know, he had seen my face, and so when he turned around, I pulled the gun out and aimed it at him. And I was like I want to do it, I don't want to do it, I want to do it. And Cliff said "Hurry up." He got out of the truck. When he grabbed me, I pulled the trigger and the gun went off and the man fell and he yelled. And Cliff started hollering, "You didn't kill him. You didn't kill him."
....
And then Cliff, he said, "Patrick, kill him." And I don't know why he called out my name. He just said, "Patrick, kill him." And then I like freaked out because I knew he knew my name now and I knew that he had seen me. Cliff came around the back of me. I put the gun to his head and turned the other way, and I pulled the trigger twice and turned around and ran.
The testimony of Barth also lends some support to the appellant's theory. As the State candidly notes in its brief, "Barth denied that Bonifay told him anything about a `killing.'" Barth testified that when he talked with Bonifay on the Thursday before the murder, there was no mention of shooting anybody. It was Barth's understanding that there was going to be no shootingjust a robbery. Barth also testified:
Patrick Bonifay said he wanted to rob this store, and is basically how it happened, you know.
....
Q. What was the plan that night?
A. To go in and rob the store and get the money.
Because of the existence of this evidence and the reasonable inferences that can be drawn therefrom, I do not believe we can conclude that the giving of the constitutionally infirm instruction was harmless "beyond a reasonable doubt." That the evidence of CCP is substantial is simply not the test:
The [harmless error] test is not a sufficiency-of-the evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility *24 that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful. This rather truncated summary is not comprehensive but it does serve to warn of the more common errors [in applying a harmless error analysis] which must be avoided.
State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986).
The jury recommendation for death was seven to five, one vote away from a tie vote which must be treated as a recommendation for life. It is also important to note that the CCP aggravator was the most serious aggravator of the two found by the trial court, and, without it, only the aggravator of a killing during the course of a robbery remains. In addition, the trial court gave significant weight to the statutory mitigator of no significant history of prior criminal activity. As already noted, our holding today directly conflicts with our recent decision in Jackson. I would follow Jackson and reverse.
SHAW and KOGAN, JJ., concur.
NOTES
[1] The trial court found two aggravating circumstances: the capital felony was committed while the defendant was engaged in or was an accomplice in the commission of a robbery; and the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. See § 921.141(5)(d), (i), Fla.Stat. (1993).
[2] The trial court found one statutory mitigating circumstance, Archer had no significant history of prior criminal activity, which the trial court gave significant weight. See § 921.141(6)(a), Fla.Stat. (1993). The court also found one nonstatutory mitigating factor, Archer had been a good family member to his grandmother, which the court felt was entitled to some weight.
[3] Archer claims the trial court erred in not giving the jury instructions conforming to the following Florida Standard Jury Instructions In Criminal Cases: 2.02, statement of charge; 2.03, plea of not guilty, reasonable doubt, and burden of proof; 2.04, weighing the evidence; 2.04(a), expert witnesses; 2.04(b), accomplice; 2.04(d), defendant not testifying; 2.04(e), defendant's statements; 2.05, rules for deliberation; 2.07, cautionary instructions; and 2.09, submitting the case to the jury. Archer also claims the trial court erred in not giving the jury the miscellaneous instructions 3.01, principals, and 3.01(a), principalswhen active participant hired by defendant.
[4] See § 921.141(6)(g), Fla.Stat. (1991).
[5] Of course, there is an abundance of evidence to the contrary, but that is not relevant to a harmless error analysis. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
[6] There was testimony that Wells and the actual victim looked somewhat alike.