# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-2811
_____

JOSEPH JOHN ANADY,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Escambia County.
John F. Simon, Jr., Judge.

December 23, 2025

EN BANC

WINOKUR, J.

Joseph John Anady appeals his convictions and sentences for sexual battery of a victim under twelve, lewd or lascivious molestation of a victim under twelve, lewd or lascivious exhibition in the presence of a victim less than sixteen, and battery of a child by expelling seminal fluid. We affirm, and write only to address Anady's claim that the trial court fundamentally erred when it failed to read Standard Jury Instruction (Crim.) 3.7, which addresses reasonable doubt and related matters, to the jury.

# I

At the outset of jury selection, the judge informed the prospective jurors that the State would be required to prove its allegations beyond a reasonable doubt. It also provided the prospective jurors a definition of reasonable doubt.[1] Later in jury selection, both the prosecutor and defense counsel described the State's burden of proof and asked potential jurors whether they understood what that meant. After swearing in the jury, the court gave initial instructions, where it reminded the jury about the State's burden of proof: "It is your solemn responsibility to determine if the State proved its accusation beyond a reasonable doubt against Mr. Anady, in accordance with the law that I provide to you." The court also explained that "[a]t no time is it the duty of the defendant to prove his innocence."

At trial, the evidence showed that police began investigating Anady after the victim's father reported his suspicion that Anady was abusing his daughter. When the father worked on the weekends, the victim's sister and Anady (who was living with the victim's sister), babysat the victim. The sister left the victim alone with Anady when she went to work. The victim testified that when

---

[1] The court defined reasonable doubt as follows:

> A reasonable doubt is not a mere possible doubt, a speculative, imaginary or forced doubt. Such a doubt must not influence you to return a verdict of not guilty, if you have an abiding conviction of guilt. On the other hand, if after carefully considering, comparing, and weighing all of the evidence, there is not an abiding conviction of guilt or if having a conviction, it is one which is not stable but one which wavers and vacillates, then the charge is not proved beyond every reasonable doubt, and you must find the defendant not guilty because the doubt is reasonable.

All the prospective jurors indicated to the judge that they understood the definition.

her sister was away, Anady would touch her butt with his private part. The victim testified that Anady inserted his penis into her butt and ejaculated on her before telling her to go wipe it off. The victim testified that these abuses happened more than ten times. Anady testified and denied all the allegations against him.

During the charge conference, neither party objected to the trial court's failure to include Standard Jury Instruction 3.7. During its closing argument, the State repeatedly informed the jury that it was the State's burden to prove Anady guilty of each element of the charged offenses beyond a reasonable doubt. Anady's counsel also mentioned the State's burden repeatedly.

The jury found Anady guilty as charged. The court sentenced him to consecutive life sentences on counts one and two, fifteen years on count three, and five years on count four.

## II

Anady argues in this appeal that the trial court's failure to read Standard Jury Instruction 3.7 constitutes fundamental error. "[J]ury instructions are subject to the contemporaneous objection rule[.]" *Archer v. State*, 673 So. 2d 17, 20 (Fla. 1996). Anady did not object to the trial court's failure to read Florida Standard Jury Instruction 3.7, so he must show that fundamental error occurred. *See id.* Fundamental error is one "which reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Id.* (quoting *State v. Delva*, 575 So. 2d 643, 644–45 (Fla. 1991)).

Anady notes that several district court of appeal decisions hold that omission of Standard Jury Instruction 3.7 constitutes fundamental error. He also reminds this court that in many of these prior cases, the State conceded error on appeal. The State in this case chose not to concede error, arguing instead that, given the facts of the case, the omission did not constitute fundamental error. We agree with the State.

3

A

Standard Jury Instruction 3.7 essentially addresses three matters: first, it informs the jury that the defendant maintains a presumption of innocence; second, it informs the jury that the State bears the burden to prove the defendant's guilt beyond a reasonable doubt; and third, it defines reasonable doubt.

While the trial court here did not give Standard Jury Instruction 3.7 to the jury, in fact only the second of the three matters is constitutionally required. Failure to instruct the jury that the State must prove the defendant's guilt beyond a reasonable doubt is a constitutional violation. *See Jackson v. Virginia*, 443 U.S. 307, 320 n.14 (1979) ("[F]ailure to instruct a jury on the necessity of proof of guilt beyond a reasonable doubt can never be harmless error."). Indeed, the failure to do so is structural error. *See United States v. Davila*, 569 U.S. 597, 611 (2013) (listing as an example of structural error the "failure to convey to a jury that guilt must be proved beyond a reasonable doubt"). But neither instruction regarding the presumption of innocence nor a definition of reasonable doubt is constitutionally required. If a trial court fails to instruct or misinstructs on either of those two, then an appellate court may find fundamental error, but only after examining the record in its entirety. *See Kentucky v. Whorton*, 441 U.S. 786, 788 (1979) (approving its own reversal in an earlier case that had been based "on the failure to give [an instruction on the presumption of innocence] as it related to the overall fairness of the trial considered in its entirety").

B

While the Supreme Court of the United States has held that "[t]he beyond a reasonable doubt standard is a requirement of due process," it has made it clear that "the Constitution neither prohibits trial courts from defining reasonable doubt *nor requires them to do so as a matter of course*." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (emphasis supplied).

To repeat, the Constitution does *not* require a court to define reasonable doubt to a jury. "Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved

4

beyond a reasonable doubt, see [*Jackson*], the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor*, 511 U.S. at 5. Ultimately, the Court concluded in *Victor* that the instructions at issue there did not define reasonable doubt in a manner that violated the Constitution.[2] *Id.* at 22–23.

Our supreme court has applied the holding of *Victor* to Florida cases. *See, e.g., Murray v. State*, 3 So. 3d 1108, 1123 (Fla. 2009):

> In *Victor*, the United States Supreme Court clarified that the trial court is not required to, or prohibited from, defining "reasonable doubt." Instead, to comply with its constitutional requirements, the trial court need only instruct the jury "that the defendant's guilt [must] be proved beyond a reasonable doubt." (citation omitted).

*See also Archer*, 673 So. 2d at 20 ("While the State must prove each element of a crime beyond a reasonable doubt, our cases have not found error when a jury is instructed on this standard *but not given a definition of the term*." (citing *Victor*, 511 U.S. 1 (emphasis supplied)). Our supreme court understands that the failure to define reasonable doubt does not, by itself, render a conviction constitutionally infirm. *See also Knight v. State*, 53 So. 541 (Fla. 1910) (holding that it is not error to merely fail to define reasonable doubt to the jury, when there is no request for it).

C

The Supreme Court of the United States discussed the effect of the omission of an instruction regarding the presumption of

---

[2] The *Victor* Court did conclude that "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury." *Victor*, 511 U.S. at 22 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). This is not, however, a requirement that jury instructions define reasonable doubt. Rather, the Court simply concluded that the instructions at issue *did* correctly convey the concept—that is, they did not *incorrectly* convey the concept—so they were not unconstitutional.

innocence in two cases: *Taylor v. Kentucky*, 436 U.S. 478 (1978), and *Whorton*. In *Taylor*, the Court held that "on the facts of this case" the omission of an "instruction on the presumption of innocence resulted in a violation of [the defendant's] right to a fair trial[.]" *Id.* at 490. However, the following year the Court clarified this ruling in *Whorton*. While the Court in *Taylor* had "reversed a conviction resulting from a trial in which the judge had refused to give a requested instruction on the presumption of innocence, *the Court did not there fashion a new rule of constitutional law requiring that such an instruction be given in every criminal case.*" *Whorton*, 441 U.S. at 788 (emphasis supplied). "Rather, the Court's opinion [in *Taylor*] focused on the failure to give the instruction *as it related to the overall fairness of the trial considered in its entirety.*" *Id.* (emphasis supplied). The Court concluded as follows:

> In short, the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution. Under *Taylor*, such a failure must be evaluated in light of the totality of the circumstances— *including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors*—to determine whether the defendant received a constitutionally fair trial.

*Id.* at 789 (emphasis supplied).

In short, the Constitution does not "absolutely require[] an instruction on the presumption of innocence . . . in every criminal case." *Whorton*, 441 U.S. at 789–90. Instead, the omission of such instruction must be analyzed for reversible error "in light of the totality of the circumstances." *Id.* at 790. "[T]otality of the circumstances" is not limited to other jury instructions; it also includes "the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors[.]" *Id.* at 789.

Florida courts have also ruled that the unobjected-to omission of an instruction on the presumption of innocence is not a reversible error unless the appellant demonstrates that the omission "caused fundamental unfairness." *McCrae v.*

*Wainwright*, 439 So. 2d 868, 872 (Fla. 1983); *see also Spells v. State*, 283 So. 2d 54, 55 (Fla. 4th DCA 1973) (holding that omission of instruction on presumption of innocence was "harmless because the remainder of that instruction adequately explains that the presumption of innocence does not leave the defendant unless and until every material allegation of the information has been proved and that the indispensable quantum of proof is evidence to the exclusion of and beyond every reasonable doubt").

## III

The record amply demonstrates that the jury was well informed regarding the presumption of innocence and, more importantly, the State's burden to prove Anady's guilt beyond a reasonable doubt. This conclusion comes not only from statements of the prosecutor and defense counsel during jury selection, opening statements, and closing argument (though both counsel repeatedly mentioned the presumption of innocence and the State's burden), but from the court's own instruction to the jury.

During jury selection, the prosecutor and defense counsel informed the jury selection panel multiple times that the State bore the burden of proof, that its burden was by proof beyond a reasonable doubt, and that Anady was presumed innocent. The court also defined reasonable doubt for the panel.

The court's opening instructions to the jury informed them that they had a "solemn responsibility to determine if the State proved its accusation beyond a reasonable doubt[,]" and that "[a]t no time is it the duty of the defendant to prove his innocence."

The jury was also repeatedly reminded during both closing arguments that the State bore the burden to prove each element of the charged offenses beyond a reasonable doubt.

During the final instructions to the jury, each time the court gave the elements of a charged crime, or of a lesser-included crime, it instructed the jury that "the State must prove the following [elements] beyond a reasonable doubt." The court read this instruction nine times. Regarding lesser-included crimes, the court instructed the jury that "if you decide the main accusation has not

7

been proved beyond a reasonable doubt, you will need to decide if the defendant is guilty of any lesser crime." The court also instructed the jury that "if you return a verdict of guilty, it should be for the highest offense on the verdict form for each count that has been proven beyond a reasonable doubt. If you find that no offense has been proven beyond a reasonable doubt, then, of course, your verdict must be not guilty."

In sum, the trial court's instructions, as well as opening statements and closing arguments, made clear that Anady was not required to prove his innocence and that the burden was on the State to prove the elements of the charged offenses beyond a reasonable doubt. On this record, Anady cannot show that the failure to give the standard jury instruction affected the jury's verdict or the fairness of the trial. No reasonable argument can be made that the court failed to convey to the jury that it could not find Anady guilty unless it concluded that the State proved his guilt beyond a reasonable doubt, regardless of the exclusion of Standard Jury Instruction 3.7.

IV

Anady points to several district court of appeal decisions holding that the omission of Standard Jury Instruction 3.7 constitutes fundamental error. *See, e.g.*, *Cavagnaro v. State*, 117 So. 3d 1111, 1113 (Fla. 3d DCA 2012); *Curry v. State*, 169 So. 3d 1258, 1259 (Fla. 5th DCA 2015); *Usry v. State*, 284 So. 3d 1128, 1129–30 (Fla. 2d DCA 2019); and *Ramirez v. State*, 392 So. 3d 156, 158 (Fla. 4th DCA 2024). We find that these cases suffer from the following deficiencies:

- The notion, on which these cases rest, that a trial court fundamentally errs unless it reads a specific standard jury instruction distorts the purpose and effect of standard jury instructions.

- These cases ignore the decisions of the Supreme Court of the United States germane to the issues raised, *Victor* and *Whorton*, and rely instead on a dissenting opinion in *Arizona v. Fulminante*, 499 U.S. 279 (1991).

8

- These cases do not properly address whether the omitted instruction impacted the fundamental fairness of trial, either by unjustifiably rejecting record evidence or by implying that the omission constitutes fundamental error per se, requiring reversal regardless of record evidence.

A

The cases Anady cites suggest that the jury will not know the presumption of innocence or the State's obligation to prove guilt beyond a reasonable doubt unless the court reads Standard Jury Instruction 3.7. Not only is this suggestion untrue (certainly in this case), but it treats a standard jury instruction in a manner that ignores our supreme court's repeated admonitions regarding the limitations of the standard instructions and its consequent decision to discontinue its practice of authorizing them.

Prior to 2020, committees on standard jury instructions were required to "prepare new and amended standard jury instructions . . . and report those instruction changes to [the Florida Supreme] Court, which, in turn, authorize[d] the instructions for publication and use in a written opinion." *In re Amends. to Fla. Rules of Jud. Admin., Fla. Rules of Civ. Proc., & Fla. Rules of Crim. Proc.–Standard Jury Instructions*, 407 So. 3d 1201, 1201–02 (Fla. 2020). When authorizing instructions, the Court included a caveat "explaining that by so authorizing the instructions the Court expresses no opinion on the correctness of the instructions[.]" *Id.* at 1202.

But in 2020, the Court found that, despite this caveat, "some wrongly believe that by authorizing for publication and use standard instructions prepared by the committees, the Court has ruled on the legal correctness of those instructions." *In re Amends.*, 407 So. 3d at 1202–03. Therefore, the Court, to "avoid any misconception that [it] has 'adopted,' 'approved,' or otherwise ruled on the legal correctness of the standard jury instructions prepared by the committees," decided that it "should no longer be involved in the development and authorization for use of Florida's standard jury instructions." *Id.* at 1203. The Court then gave the jury instructions committees authority to approve the instructions they developed and specified that such instructions "are not approved

or otherwise specifically authorized for use by this Court[.]" *Id.* at 1205; *see also* Fla. R. Gen. Prac. & Jud. Admin. 2.580(c) (entitled "No Supreme Court Approval or Presumption of Correctness[,]" referring to standard jury instructions).

The import of this change is clear: standard jury instructions are created by a committee to assist courts in instructing a jury, and the supreme court has no part in them. Standard Jury Instruction 3.7 is not a rule issued by the Supreme Court under its constitutional authority to adopt rules of procedure. Nor is it a statutory provision or even a passage drawn from an appellate opinion. It is a recommendation from a committee—nothing more. Therefore, a trial court is never required to use any particular standard instruction. *See* Fla. R. Gen. Prac. & Jud. Admin. 2.580(a) (specifying that standard jury instructions "may" be used by trial judges "unless the trial judge determines that an applicable standard jury instruction is erroneous or inadequate, in which event the judge shall modify the standard instruction or give such other instruction as the trial judge determines to be necessary to instruct the jury accurately and sufficiently").

Given this background, the premise that a court not just errs, but commits fundamental error, by neglecting to read to the jury language that was drafted by and recommended by a committee, without approval or authorization by the supreme court, turns a suggestion into an obligation.

Of course, as stated above, jurors must be informed that the State bears the burden to prove each element of the charged crime beyond a reasonable doubt. But the jury in this case was amply informed of this requirement, even without Standard Jury Instruction 3.7. The fundamental fairness of this trial does not turn on the omission of a committee-drafted standard instruction.

By holding that the exclusion of Standard Jury Instruction 3.7 constitutes fundamental error, the opinions noted above appear to reflect our supreme court's concern (the very concern that motivated it to stop authorizing standard instructions) that "some" were treating standard instructions as if they were pronouncements from the supreme court, rather than recommendations from a committee. Each of these opinions

10

includes the entirety of Standard Jury Instruction 3.7 verbatim, as if every word of the standard instruction is a proclamation from on high. We should not make the same mistake.[3]

B

The cases Anady mentions hold that *Arizona v. Fulminante* supports their view that failure to read Standard Jury Instruction 3.7 constitutes fundamental error. *See, e.g.*, *Cavagnaro*, 117 So. 3d at 1113 (quoting *Fulminante*, 499 U.S. at 291); *Curry*, 169 So. 3d at 1259 (same); *Usry*, 284 So. 3d at 1130 (same); *Ramirez*, 392 So. 3d at 158 (same). These cases mis-cite *Fulminante*, by improperly stating that it ruled on a reasonable-doubt instruction. *Fulminante* holds no such thing, because the provision cited was in fact a dissent.

*Fulminante* held that the erroneous admission of a coerced confession is subject to harmless error analysis on appeal. *Fulminante*, however, was a plurality decision, with different justices joining different parts of the various opinions. Part III of Justice White's opinion stated the following:

> [I]t is impossible to assess the effect on the jury of the omission of the more fundamental instruction on reasonable doubt. In addition, omission of a reasonable-doubt instruction, though a "trial error," distorts the very structure of the trial because it creates the risk that the jury will convict the defendant even if the State has not met its required burden of proof.

*Fulminante*, 499 U.S. at 291. This is the passage cited by *Cavagnaro*, *Curry*, *Usry*, and *Ramirez*.

---

[3] In making this observation, we do not mean to disparage the standard jury instructions or the committees, who perform excellent work to create them and keep them accurate and updated. The standard jury instructions are an exceptionally useful tool for trial courts. But they are no more than suggestions. While the matters they discuss are often legally required, the standard instructions themselves carry no force of law.

Note that Justice White's opinion deals with "omission of a reasonable-doubt instruction," which suggests that the jury was not informed at all that the State bore the burden to prove the defendant's guilt beyond a reasonable doubt. Thus, if the court instructs the jury that the State bears the burden to prove the defendant's guilt beyond a reasonable doubt, then Justice White's observation does not apply. More importantly, it does not suggest that the court necessarily errs in failing to *define* reasonable doubt (or in failing to note that the defendant is presumed innocent).

But there is a more fundamental issue regarding Part III of Justice White's opinion. *Cavagnaro*, *Curry*, *Usry*, and *Ramirez* each cite this provision as if it constitutes the ruling of the Supreme Court of the United States. In fact, Part III of Justice White's opinion was a dissent. *See Fulminante*, 499 U.S. at 282 ("Justice WHITE delivered an opinion, Parts I, II, and IV of which are the opinion of the Court, and Part III *of which is a dissenting opinion*." (emphasis supplied)). Accordingly, these cases reached their conclusions by misapplying *Fulminante*, treating a dissent as the Court opinion. This misapplication may have led these courts to the wrong conclusion.[4]

Finally, not only did the courts in *Cavagnaro*, *Curry*, *Usry*, and *Ramirez* improperly cite a dissenting Supreme Court opinion to support an incorrect conclusion, but none of them cited either *Victor*, a Supreme Court case that *does* address the necessity of an instruction defining reasonable doubt, or *Whorton*, a Supreme

---

[4] While *Cavagnaro*, *Curry*, *Usry*, and *Ramirez* all rely on Justice White's dissent in *Fulminante*, they fail to recognize that Justice White acknowledged that it was "possible to analyze as harmless the omission of a presumption of innocence instruction when the required reasonable-doubt instruction has been given[.]" *Fulminante*, 499 U.S. at 291. Thus, even Justice White's *Fulminante* dissent does not support the contention that omission of a presumption of innocence instruction is error without a prejudice analysis.

Court case that *does* address the necessity of an instruction regarding presumption of innocence.

C

The district court of appeal decisions noted above defied the rules established by *Victor*, *Whorton*, and similar cases, which held that neither instruction on the presumption of innocence nor a definition of reasonable doubt is always constitutionally required. These decisions also improperly treat Standard Jury Instruction 3.7 as if it contained the only mention of the reasonable-doubt standard in the instructions. We respectfully conclude that these errors led the courts to incorrect results.

The earliest case Anady cites for the proposition that omission of Standard Jury Instruction 3.7 is fundamental error is *Cavagnaro*. The court there rejected the State's argument that the trial court gave a sufficient reasonable doubt instruction during jury selection, concluding that "[p]rospective jurors are not the sworn jurors who have actually heard the evidence and are *then* given all of the instructions[.]" *Cavagnaro*, 117 So. 3d at 1113. The State also argued that "counsel for the state and the defense instructed the jury regarding proof beyond a reasonable doubt[,]" which the court rejected because "the trial judge instructed the jury *not* to follow the attorneys' instructions on matters of law[.]" *Id.*

Even if these observations were correct, they do not necessarily foreclose a finding that omission of Standard Jury Instruction 3.7 was not fundamental error. The purpose of fundamental-error review is to determine whether the trial was fundamentally unfair. *See, e.g., Sparks v. State*, 740 So. 2d 33, 35 (Fla. 1st DCA 1999) ("Fundamental error has been defined as error that goes to the essence of a fair and impartial trial, error so fundamentally unfair as to amount to a denial of due process."). Under this standard, we cannot completely dismiss information provided to the jury prior to final jury instructions. Put another way, we cannot ignore repeated references to the State's burden and to the reasonable doubt standard throughout trial in determining whether the trial was fundamentally unfair. One wonders why counsel would bother to mention burden and

13

standard to the jury (an almost-universal practice) if the jury were bound to ignore them.

In fact, juries are not prohibited from listening to arguments of counsel that state legal requirements. The *Cavagnaro* court cites part of Standard Jury Instruction (Crim.) 2.7 for its conclusion that juries are "*not* to follow the attorneys' instructions on matters of law[.]" *Cavagnaro*, 117 So. 3d at 1114 (emphasis in original). This conclusion misstates the instruction. Standard Jury Instruction 2.7 does in fact say that "what the attorneys say is not evidence, nor is it an instruction on the law," but the *Cavagnaro* court omitted the sentences in the standard instruction that follow: "However, do listen closely to their arguments. They are intended to aid you in understanding the case." Fla. Std. Jury Instr. (Crim.) 2.7. In other words, while the court is the sole authority to instruct the jury on the law, the jury is not forbidden to "follow" the law as stated by counsel. If counsel makes an argument about the law that is inconsistent with the court's instructions, then the jury must follow the instructions because an argument is not an "instruction on the law." But if counsel makes a statement about the law that is *not* inconsistent with the instructions, then juries are not required to ignore it, because "arguments . . . are intended to aid [the jury] in understanding the case." Here, none of the statements of counsel regarding burden or standard were inconsistent with the instructions the court gave the jury, or with the omitted instruction. No principle of law requires the jury to ignore the prosecutor or defense counsel when they mention legal requirements while arguing how, in their view, the law applies to the prosecution. This is especially true when we are attempting to determine whether the trial was fundamentally unfair.[5]

---

[5] This observation also applies to the definition of reasonable doubt provided to the jury selection panel. Even though a definition of reasonable doubt is not required, the question is not, as the *Cavagnaro* court framed it, whether a panel of prospective jurors is different than the jury panel. Instead, the question is whether the jurors were aware of the correct standards by which they were to judge Anady, such that his trial was not fundamentally unfair. Categorically ignoring information because

14

More importantly, the Supreme Court of the United States ruled in *Whorton* that we can consider "the arguments of counsel," as well as "all the instructions to the jury" and "other relevant factors," as part of the "the totality of the circumstances" in determining whether the omission of a presumption-of-innocence instruction was a constitutional violation. *See Whorton*, 441 U.S. at 789. For this reason, we respectfully reject the conclusion of the *Cavagnaro* court that these matters must be excluded from a fundamental-error analysis.

Even if we had to exclude statements made during jury selection, or even statements made by counsel during opening statements or closing argument, as noted above the court in this case instructed the jury both at opening instructions and in final instructions that Anady was presumed innocent and that the State had to establish his guilt beyond a reasonable doubt.

It also cannot be ignored that the *Cavagnaro* court relied on Justice White's dissenting opinion in *Fulminante*. *See Cavagnaro*, 117 So. 3d at 1113. The *Cavagnaro* court did not mention the decisions of the Supreme Court of the United States in *Victor* or *Whorton*. Nor did the *Cavagnaro* court mention the decision of the Supreme Court of Florida in *Murray*. The court dismissed the Supreme Court of Florida's decision in *Archer*, refusing to apply it because *Archer* involved a "truncated instruction." *Id*. This last point, regarding *Archer*, exposes a distinction without a difference. Regardless of whether the instruction was "truncated," it omitted the definition of reasonable doubt, which the *Archer* court explicitly stated was not error as long as the jury was instructed that the State had to find the defendant guilty beyond a reasonable doubt. In short, *Cavagnaro* fails to recognize applicable cases from the Supreme Courts of the United States and of Florida and does not properly determine whether the appellant's trial was fundamentally unfair.

*Curry* also involved omission of Standard Jury Instruction 3.7 during the final charge. *See Curry*, 169 So. 3d at 1259. The State

it was provided at jury selection rather than in final instructions does not promote this effort.

conceded error, and the court stated, "[w]e can think of little more fundamental in a criminal trial than instructing the jury on the State's burden of proof beyond a reasonable doubt." *Id*. This observation is true, but it does not mean instruction of the presumption of innocence or on the definition of reasonable doubt are likewise fundamental; as stated above, they are not. We do not know whether the jury in *Curry* was otherwise instructed that the State bears the burden of proving the appellant's guilt beyond a reasonable doubt. Again, the *Curry* court treated Standard Jury Instruction 3.7 as if it is the only mention of the reasonable-doubt standard that a jury ever hears. In addition to relying on *Cavagnaro*, the court in *Curry* also relied on Justice White's dissenting opinion in *Fulminante*. *See id*. at 1259. Curry did not mention *Victor*, *Whorton*, *Murray*, or *Archer*.

*Usry* involved the same issue. *See Usry*, 284 So. 3d at 1129. Again, the State conceded error. *Id*. In reaching its decision, the court relied on *Cavagnaro*, *Curry*, and Justice White's dissenting opinion in *Fulminante*. *See id*. at 1130. *Usry* did not mention *Victor*, *Whorton*, *Murray*, or *Archer* either.

The court in *Ramirez*, confronted with the same issue, concluded, "we draw from [*Cavagnaro*, *Curry*, and *Usry*] the principle that a defendant has a fundamental right to have the full and complete instructions, embodied in Standard Jury Instruction 3.7, given during the final charge to the jury." *Ramirez,* 392 So. 3d at 158. In other words, the *Ramirez* court ruled explicitly that a defendant not only has a fundamental right to instruction on the presumption of innocence and a definition of reasonable doubt—despite contrary supreme court cases—but also that these instructions must be provided by way of a committee-written suggested instruction. The *Ramirez* court waved away the State's argument that other instances during the trial, where the jury was instructed on the presumption of innocence and reasonable doubt, showed that the absence of Standard Jury Instruction 3.7 demonstrated that fundamental error did not occur, because these instructions were not "a proper substitute" for Standard Jury Instruction 3.7. *Id.* As stated above, we cannot base fundamental error on the omission of a committee-written suggestion by ignoring other instructions given to the jury on the presumption of innocence and reasonable doubt.

16

Finally, like the courts in *Cavagnaro*, *Curry*, and *Usry*, the *Ramirez* court relied on Justice White's dissenting opinion in *Fulminante* and did not mention *Victor, Whorton, Murray*, or *Archer*.

This Court has also ruled in two cases that the omission of Standard Jury Instruction 3.7 constitutes fundamental error. *See Burnette v. State*, 103 So. 3d 1059 (Fla. 1st DCA 2013); *Williams v. State*, 292 So. 3d 1288 (Fla. 1st DCA 2020). *Burnette* accepted the State's concession of error based on *Cavagnaro*. *Burnette* includes no facts, other than that the court neglected to give Standard Jury Instruction 3.7. Nor does *Burnette* contain any analysis of the issue. The same is true of *Williams*, which reversed with nothing more than a citation to *Burnette*. It clearly appears that *Burnette* and *Williams* did nothing more than perpetuate the errors made in *Cavagnaro*. Accordingly, they were wrongly decided.

V

In summary, the district court decisions noted above include numerous errors. Those decisions gave improper effect to a standard jury instruction, treated a dissenting opinion as the opinion of the Supreme Court of the United States, failed to recognize that neither instruction on presumption of innocence nor a definition of reasonable doubt is constitutionally required, and failed to give proper effect to instances throughout trial where the jury was informed of the presumption of innocence and the State's burden to prove the defendant's guilt beyond a reasonable doubt. Omission of a committee-drafted recommended instruction, by itself, does not show that a defendant suffered a fundamentally unfair trial. As the record in this case clearly shows, the jury was well informed that it could not find Anady guilty of anything unless the State proved his guilt beyond a reasonable doubt. Therefore, Anady's claim of fundamental error fails. We affirm, and we certify conflict with the decisions in *Cavagnaro*, *Curry*, *Usry*, and *Ramirez*.

AFFIRMED, CONFLICT CERTIFIED.

OSTERHAUS, C.J., and LEWIS, BILBREY, KELSEY, M.K. THOMAS, NORDBY, TANENBAUM, LONG, and TREADWELL, JJ., concur.

17

BILBREY, J., specially concurs with an opinion in which KELSEY, J., joins.

ROWE, J., concurs in part and dissents in part with an opinion in which ROBERTS, RAY, and TANENBAUM, JJ., join.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

BILBREY, J., specially concurring.

I fully concur in the en banc majority opinion. Judge Winokur correctly points out that fundamental error always occurs when a jury is not instructed that a defendant's guilt must be proven beyond a reasonable doubt, but that failure to instruct a jury on the presumption of innocence or to define reasonable doubt is not fundamental error in every instance. I write to address two additional points.

First, failing to correctly instruct a jury on reasonable doubt remains reversible error, and in some instances fundamental error. If a defendant requests that the jury be accurately instructed on the definition of reasonable doubt, it would be error for a trial court to fail to do so. *Barwicks v. State*, 82 So. 3d 356, 358 (Fla. 1955) (On Petition for Rehearing); *see also Shiver v. State*, 27 So. 36, 40 (Fla. 1899). And it would be fundamental error if an instruction to the jury on reasonable doubt was "suggestive of a higher degree of doubt than that required under the reasonable doubt standard." *Murray v. State*, 3 So. 3d 1108, 1123 (Fla. 2009) (citing *Cage v. Louisiana*, 498 U.S. 39, 41 (1990)); *see also Bove v. State*, 670 So. 2d 1066, 1069 (Fla. 4th DCA 1996).

Second, had Anady's defense counsel asked for Standard Jury Instruction 3.7, the jury would have been told in part:

18

The defendant has entered a plea of not guilty. This means you must presume or believe the defendant is innocent. The presumption stays with the defendant as to each material allegation in the [information] [indictment] through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt.

To overcome the defendant's presumption of innocence, the State has the burden of proving the crime with which the defendant is charged was committed and the defendant is the person who committed the crime.

Perhaps there is a strategic reason why competent defense counsel would not want this instruction on the presumption of innocence given to the jury in every case, but such a reason eludes me. *See, e.g.*, *Johnson v. State*, 301 So. 3d 443, 447 (Fla. 1st DCA 2020) (quoting *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000)) ("It is well-settled that 'strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.'").

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895). Unless there was a sound strategic rationale, failing to have the jury instructed on the foundational legal principle of the presumption of innocence is ineffective assistance of counsel. *See, e.g.*, *Mathis v. State*, 973 So. 2d 1153, 1156–57 (Fla. 1st DCA 2006) (holding that failure to request a jury instruction can result in ineffective assistance of counsel).

If ineffective assistance of counsel has occurred, a defendant still must show that had there not been ineffective assistance "there is a reasonable probability that the outcome would have been different." *Mathis*, 973 So. 2d at 1156–57 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Here, however, since no fundamental error occurred, no claim of ineffective assistance of trial counsel is before us. *See Steiger v. State*, 328 So. 3d 926, 928 (Fla. 2021) (holding that in absence of fundamental error, an

ineffective assistance of trial counsel claim could not be raised on direct appeal). So we cannot address whether ineffective assistance of counsel occurred here when the jury was not given Standard Jury Instruction 3.7 or whether Anady was prejudiced by any ineffective assistance.

ROWE, J., concurring in part and dissenting in part.

I concur in the majority opinion. I dissent from the certification of conflict.

_____

Jessica J. Yeary, Public Defender, and Victor D. Holder, Assistant Public Defender, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Adam B. Wilson, Assistant Attorney General, Tallahassee, for Appellee.